# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of David Mark Foster, Respondent.

Appellate Case No. 2024-001660

---

Opinion No. 28277
Submitted April 9, 2025 – Filed April 30, 2025

---

### DEFINITE SUSPENSION

---

Disciplinary Counsel William M. Blitch, Jr, and
Assistant Disciplinary Counsel Phylicia Yvette Christine
Coleman, both of Columbia, for the Office of
Disciplinary Counsel.

Steve Wayne Sumner, of Steve W. Sumner, LLC, of
Greenville, for Respondent.

---

**PER CURIAM:**   In this attorney disciplinary matter, Respondent and the Office
of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by
Consent (Agreement) pursuant to Rule 21 of the Rules for Lawyer Disciplinary
Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court
Rules (SCACR).  In the Agreement, Respondent admits misconduct and consents
to the imposition of a public reprimand or a definite suspension not to exceed one
year.  We accept the Agreement and suspend Respondent from the practice of law
in this state for one year.  The facts, as set forth in the Agreement, are as follows.

## I.

Respondent was admitted to practice in 2011 and has no prior disciplinary history.
This Agreement resolves four disciplinary complaints that were filed with ODC
between 2021 and 2024.

The first complaint addressed in the Agreement involves both criminal misconduct and client-related misconduct.

## Criminal Misconduct

On July 15, 2021, ODC initiated an investigation after receiving information from the Thirteenth Judicial Circuit Solicitor's Office regarding several driving under the influence charges that were pending against Respondent. Specifically, on August 28, 2020, Respondent was arrested and charged with one misdemeanor count of Driving Under the Influence (DUI) under section 56-5-2930(A) of the South Carolina Code. On June 9, 2023, Respondent pled guilty to Driving with an Unlawful Alcohol Concentration, First Offense, and was sentenced to a fine and completion of an alcohol and drug safety program.

On June 5, 2021, Respondent was arrested and charged with one misdemeanor count of second-degree criminal domestic violence under section 16-25-20(C) of the South Carolina Code. A bond order was filed on June 8, 2021, specifying the conditions of Respondent's release, which included a prohibition from Respondent contacting the victim directly or indirectly. On June 20, 2021, Respondent had direct contact with the victim in violation of the bond order. The criminal charge was nevertheless reduced to third-degree assault and battery, to which Respondent pled guilty on March 21, 2023. Respondent was sentenced to time served.

On June 13, 2021, Respondent was arrested and charged with another misdemeanor count of DUI under section 56-5-2930(A) of the South Carolina Code and one misdemeanor count of Child Endangerment under section 56-5-2947 of the South Carolina Code. Respondent's driver's license was suspended on June 13, 2021; however, Respondent continued to drive. These charges were dismissed in July 2023 based on prosecutorial discretion, and an Ignition Interlock Device was installed in Respondent's vehicle.

On August 20, 2021, Respondent was charged with one misdemeanor count of Driving Under Suspension under section 56-1-460(A)(1)(a) of the South Carolina Code. Two days later, he was arrested and charged with another misdemeanor count of DUI under section 56-5-2930(A) of the South Carolina Code. This DUI was reduced to Driving with an Unlawful Alcohol Concentration, and Respondent pled guilty to that offense on April 21, 2023. He was sentenced to thirty days in jail, suspended upon the payment of a fine. Respondent paid the fine and satisfied

all the requirements of his sentence.

Respondent admits his criminal acts reflect adversely on his fitness as a lawyer and bring the legal profession in to disrepute.

## Client-Related Misconduct

In the course of investigating the above facts, ODC became aware of additional misconduct regarding Respondent's failure to appear in court on behalf of one client and his failure to deposit fees paid to him by another client into his law firm's trust account.

### Client 1

Client 1 was arrested for DUI on February 5, 2021. While at the detention center, Client 1 was notified there was a warrant for her arrest on a harassment charge. Client 1 contacted Respondent regarding both charges, and Respondent filed a Notice of Representation for the DUI charge on March 13, 2021. This notice did not reflect representation on the harassment charge, but Respondent acknowledges he agreed to represent Client 1 on both the DUI charge and the harassment charge. Client 1 paid Respondent $5,000 on March 14, 2021, and agreed to pay an additional $2,500 by March 26, 2021. These funds were deposited into the trust account of Price Benowitz LLP, the firm for which Respondent worked at the time. Client 1 was scheduled to appear in court on June 2, 2021, for the harassment charge and on August 25, 2021, for the DUI charge.

On August 8, 2021, Client 1 was pulled over by law enforcement for a traffic violation and issued a ticket for not having proper registration and for failing to maintain insurance. Client 1 was then placed under arrest pursuant to a bench warrant issued for her failure to appear in court on June 2, 2021, regarding the harassment charge. Contrary to Client 1's belief, Respondent did not request a jury trial for the harassment charge, nor did Respondent enter a Notice of Appearance with the court prior to the June 2, 2021 hearing.

Respondent filed a request for a jury trial and notified the court of his representation of Client 1 on August 9, 2021, after Client 1 was released from the detention center. Respondent informed Client 1 that he was present at the June court date for the harassment charge, was unsure why he was not put in the system as Client 1's attorney of record, and insisted it was a clerical error. On August 30, 2021, Client 1 requested a refund and copy of her client file. Price Benowitz

issued the refund to Client 1 on Respondent's behalf. Respondent admits he failed to act with reasonable diligence and promptness in representing Client 1.

*Client 2*

Respondent began employment with Price Benowitz on October 20, 2020. Respondent was paid for representation and was substituted as counsel for Client 2 on April 23, 2021.

Respondent directed an undated letter to Lieutenant Licurs, on Price Benowitz letterhead, informing the Lieutenant that Respondent was retained to represent Client 2 and requested a professional visit via telephone/video with Client 2. Respondent represented and held himself out as a lawyer employed with Price Benowitz; however, Prize Benowitz had no records of their firm representing Client 2 and no evidence that Respondent deposited the fees paid by Client 2 into the Price Benowitz trust account. Respondent and Price Benowitz had an understanding that all previous client information from his solo practice would be entered into the Price Benowitz client management system and all fees would be deposited into the Price Benowitz trust account.

Respondent represents that he was hired by Client 2 based on communications that occurred prior to his employment with Price Benowitz; therefore, he deposited the fee into his old firm's trust account instead of the Price Benowitz trust account. Respondent admits his failure to deposit the fees paid to him, as an employee of Price Benowitz, into the Price Benowitz trust account reflects adversely on his honesty and trustworthiness as a lawyer.

*Matter B*

Respondent was hired by Client B in November 2020 for representation regarding a traffic offense. Client B completed the requirements to have the traffic offense dismissed, and documentation was presented to the court on April 29, 2021.

On September 7, 2021, Respondent was placed on interim suspension. *In re Foster*, 434 S.C. 222, 863 S.E.2d 464 (2021). On November 27, 2021, Client B contacted Respondent on his personal cell phone and stated that she had been pulled over for driving under suspension in North Carolina because the November 2020 traffic ticket remained outstanding in South Carolina. Despite being on interim suspension, Respondent contacted the Greenville Municipal Court on multiple occasions throughout November and December 2021 regarding Client B's

traffic offense. Respondent also met with a judge to discuss reopening Client B's case.

On November 29, 2021, Respondent emailed a copy of a certificate documenting Client B's completion of a defensive diving course to the Greenville Municipal Court Services email address and called the Greenville Municipal Court Clerk's Office to discuss Client B's matter, agreeing to follow-up with the clerk's office later that afternoon. Respondent then contacted Client B to update her on his attempts to resolve her outstanding ticket, and Respondent drafted correspondence for Client B to provide her employer and other third parties, explaining the circumstances surrounding the suspension of her driver's license and providing his contact information and telephone number. Respondent signed this letter "Mark Foster, Attorney at Law." On November 30, 2021, Respondent contacted Client B again to give her updates on the status of the matter.

On December 2, 2021, Respondent spoke with the officer who issued Client B's ticket to discuss the citation; texted with Client B about her ticket and driving course certificate; met with the municipal judge, in person, to discuss Client B's ticket and requested the matter be opened via an *Ishmell*[1] order; sent the municipal judge an email confirming their discussions; and called the Greenville Municipal Court to follow-up on the status of the *Ishmell* order. During this phone call, Respondent referred to Client B as "his client" and implied that he continued to represent Client B as her attorney.

On December 3, 2021, Respondent called the Greenville Municipal Court Clerk's Office twice to follow upon the status of the *Ishmell* order.

On December 6, 2021, Respondent exchanged text messages with Client B regarding information the North Carolina Department of Motor Vehicles (NCDMV) needed from her. Respondent also represented to Client B that he was "in court" and would call the Greenville Municipal Court about her ticket once he was done. Respondent also contacted the Greenville Municipal Court to discuss the *Ishmell* process and Client B's ticket.

On December 10, 2021, Respondent exchanged text messages and spoke on the phone with Client B about the status of her ticket and documentation necessary to reinstate her driver's license, stating that he had contacted the NCDMV on her

---

[1] *Ishmell v. S.C. Highway Dep't*, 264 S.C. 340, 215 S.E.2d 201 (1975) (discussing the procedure regarding motions to reopen traffic cases).

behalf. Respondent also contacted the Greenville Municipal Court several times and spoke with two municipal court employees to follow-up on the status of Client B's matter.

Throughout these interactions from November 27, 2021, to December 10, 2021, Respondent failed to disclose to Client B, the officer who issued the ticket, the Greenville Municipal Court staff, the municipal judge, or the NCDMV that he had been placed on interim suspension. Rather, Respondent continued working on Client B's behalf to resolve the ticket issue, despite being suspended from the practice of law.

On August 2, 2022, this Court found Respondent guilty of criminal contempt for engaging in the practice of law while suspended. *In re Foster*, 437 S.C. 89, 876 S.E.2d 701 (2022). Respondent was sentenced to thirty days in jail, suspended upon payment of $554 in restitution to Client B and a $446 fine to this Court. Respondent paid restitution to Client B on August 15, 2022, and paid the fine to this Court on August 17, 2022. Respondent admits his conduct in this matter was dishonest and constituted the unauthorized practice of law.

*Matter C*

On September 13, 2020, Respondent was hired to represent Client C on a DUI charge. Respondent told Client C on several occasions that he was awaiting discovery for the case to move forward. Respondent was placed on interim suspension on September 7, 2021, for conduct unrelated to Client C's case. Client C obtained new representation in October 2021 and subsequently learned that Respondent had not filed a discovery motion regarding the DUI charge.

Respondent admits he failed to diligently and competently represent Client C regarding her DUI charge and that he was dishonest in his representations to Client C regarding the status of her discovery requests.

*Matter D*

Client D received a speeding ticket on September 11, 2020, and had a trial date of November 10, 2020. Respondent began employment with Price Benowitz on October 20, 2020, and was hired to represent Client D on her traffic ticket on November 4, 2020. Client D's spouse paid Respondent $500 at the time Respondent was hired to represent Client D. Respondent did not deposit the $500 fee into the Price Benowitz trust account, instead depositing the funds into his old

law firm's trust account.

On November 12, 2020, Greenville County notified Client D of a new trial date set for December 15, 2020. Client D's spouse contacted Respondent the following day to follow-up on the case. Respondent informed Client D's spouse that the case had been continued and he was awaiting notice of a new court date. Neither Client D nor Respondent appeared in court on December 15, 2020, and Client D was found guilty in her absence. On February 11, 2021, the court issued a Notice of Failure to Comply with Terms of Citation informing Client D that her failure to remit the fine within fifteen days would result in the suspension of her driver's license.

On February 17, 2021, Client D's spouse emailed Respondent and attached a copy of the notice received from the State of South Carolina regarding the traffic ticket. Client D's spouse stated in his email to Respondent: "It was my understanding the fee paid to you on 11/4/2020 was to cover your services as well as the court fine. Please advise." Respondent replied: "That should have been taken care of. I'll handle it today. Thanks for letting me know." Respondent was placed on interim suspension on September 7, 2021, for an unrelated matter. Client D's driver's license was suspended as a result of Respondent's failure to competently and diligently resolve Client D's case.

## II.

Respondent admits that his conduct violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.1 (requiring competence); Rule 1.3 (requiring diligence); Rule 3.2 (requiring a lawyer to take reasonable steps to expedite litigation); Rule 5.5(a) (prohibiting the unauthorized practice of law); Rule 8.4(b) (prohibiting a criminal act that reflects adversely on one's fitness as a lawyer); Rule 8.4(d)(prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation); and Rule 8.4(e) (prohibiting conduct prejudicial to the administration of justice).

Respondent also admits his misconduct as set forth above constitutes grounds for discipline under the following Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR: Rule 7(a)(1) (providing a violation of the Rules of Professional Conduct constitutes a ground for discipline); Rule 7(a)(3) (providing a willful violation of a valid order of this Court constitutes a ground for discipline); and Rule 7(a)(5) (prohibiting conduct that brings the legal profession into disrepute or demonstrates an unfitness to practice law).

In the Agreement, Respondent admits misconduct and agrees to the imposition of a public reprimand or a definite suspension not to exceed one year.[2] Respondent also agrees to pay costs and to complete the Legal Ethics and Practice Program Ethics School within one year. Lastly, Respondent agrees to meet with Lawyers Helping Lawyers within two months of the imposition of any sanction to undergo an alcohol and drug abuse assessment to determine whether any additional monitoring, services, or treatments are needed. Respondent agrees to comply with any recommendations made by Lawyers Helping Lawyers.

### III.

We accept the Agreement and suspend Respondent from the practice of law in this state for one year from today's date. Within thirty days, Respondent shall pay the costs incurred in the investigation and prosecution of this matter by ODC and the Commission on Lawyer Conduct. As conditions of discipline, Respondent shall (1) attend the Legal Ethics and Practice Program Ethics School within one year; and (2) meet with Lawyers Helping Lawyers within sixty days for the purpose of undergoing an alcohol and drug abuse assessment to determine whether any additional monitoring, services, or treatments are needed. Respondent shall promptly comply with any recommendations made by Lawyers Helping Lawyers, and Lawyers Helping Lawyers shall immediately notify this Court if Respondent fails to cooperate or comply.

**DEFINITE SUSPENSION.**

**KITTREDGE, C.J., FEW, JAMES, HILL and VERDIN, JJ., concur.**

---

[2] Respondent also requests that any period of definite suspension be made retroactive to the date of his interim suspension. However, given the severity of Respondent's misconduct, this Court declines to sanction Respondent retroactively.